1  **WO**

6    IN THE UNITED STATES DISTRICT COURT

7    FOR THE DISTRICT OF ARIZONA

9  Skydive Arizona, Inc.,                ) No. CV-05-2656-PHX-MHM
                                         )
10          Plaintiff,                   ) **ORDER**
                                         )
11  vs.                                  )
                                         )
12                                       )
   Cary Quattrochi, *et al.*,            )
13                                       )
            Defendant.                   )
14                                       )
                                         )
15  _____ )

16        Currently before the Court are Plaintiff Skydive Arizona's ("Skydive") Motion for

17  Attorney Fees pursuant to 15 U.S.C. §1117, (Dkt. #371), and Motion for an Award of

18  Increased Damages and Profits. (Dkt. #396). Also before the Court are Defendants Cary

19  Quattrochi, Ben Butler, USSO, LLC d/b/a 1800SKYRIDE ("USSO"), Atlanta SC, Inc.

20  ("Atlanta SC"), CASC, Inc. ("CASC"), IGOVincent, Inc.'s ("IGOVincent") Motion to

21  Reduce Jury Verdict, (Dkt. #376), and Motion for Judgement not Withstanding the Verdict,

22  Accounting, Remittitur, or in the Alternative, a New Trial. (Dkt. #395). Having considered

23  all the evidence and heard oral argument on March 3, 2010, the Court issues the following

24  Order.

25  **I.    BACKGROUND**

26        The majority of the background and procedural history of this case has been spelled

27  out in some detail in the Court's February 2, 2009, Summary Judgement Order. (Dkt. #262,

28  p.1–6). In addition, the parties are intimately familiar with the events that occurred in the

runup to trial. For the purposes of this Order, it will suffice to say that a jury trial was held beginning in the latter part of September 2009, with the jury reaching its verdict on October 2, 2010. (Dkt. #370). The Court, however, did not enter judgment at that time, electing to wait until all post trial issues had been resolved.

In its verdict, the jury found all Defendants, except Atlanta SC, Inc., guilty of Trademark Infringement, and awarded $2,500,000 in damages. It also determined that Cary Quattrochi was liable for inducing and aiding and abetting IGOVincent, Inc., USSO, LLC, and CASC, Inc.'s, infringement of Plaintiff's trademark and that Ben Butler induced and aided and abetted USSO, LLC and CASC, Inc., infringement, but not that of IGOVincent, Inc. The jury also awarded $2,500,004 in profits on Plaintiff's trademark infringement claim, apportioning its award as follows: $200,000 to Cary Quattrochi, $500,000 to Ben Butler, and $1.0 (one dollar) to all the other Defendants. In addition, the jury found that the infringement was wilful by clear and convincing evidence as to all Defendants. On Plaintiff's Lanham Act section 43(d) claim (cybersquatting), the jury found every Defendant liable, except for Atlanta SC, Inc. It went on to award statutory damages in the amount of $100,000 for six separate domain names, for a total of $600,000 in statutory damages. As to each $100,000 award, the jury apportioned responsibility for the damages as $80,000 to Cary Quattrochi and $20,000 to Ben Butler.

Finally, on Plaintiff's Lanham Act section 43(a) claim (false advertising)—the Defendants' liability for which had been determined by this Court on summary judgement—the jury awarded Plaintiff $1,000,000 in damages. The jury also found the Defendants' acts of false advertising were wilful by clear and convincing evidence as to all Defendants, except Atlanta, SC, Inc.

## II.  DEFENDANTS' POST TRIAL MOTIONS

Defendants filed two substantive post trial motions in this case. Both make nearly identical arguments, but are predicated on different legal theories. Defendants' first motion is entitled Cross-Motion to Reduce Jury Verdict ("first motion"). In it Defendants ask this Court to reduce the jury's verdict pursuant to § 35(a) of the Lanham Act, 15 U.S.C. 1117(a),

but also make a number of arguments that appear to challenge the verdict as a matter of law. Defendants' second motion is titled a Motion for Judgement not Withstanding the Verdict, Accounting, Remittitur, or in the Alternative, a New Trial ("second motion"). This motion is brought pursuant to Rules 59 and 50 of the Federal Rules of Civil Procedure and asks this Court to reduce the jury's verdict and challenges the verdict as a matter of law. Because these motions, for the most part, raise identical arguments and seek the same remedy, the Court, where possible, will address them in tandem.

**A.  Defendants' Motion for a New Trial, or in the Alternative, a Remittitur and Defendants' Cross Motion to Reduce Jury Verdict.**

**1.  Legal Standards:**

**i.  Rule 59**

Pursuant to Rule 59 of the Federal Rules of Civil Procedure ("Rule 59") the Court may, in certain circumstances, grant a new trial or offer a remittitur. See FED. R. CIV. PRO. 59(a). The decision of whether to grant a new trial rests with the sound discretion of the trial court. See Allied Chem. Corp. v. Daifon, Inc., 449 U.S. 33, 36 (1980). Traditionally, trial courts grant new trial motions "only if the verdict is contrary to the clear weight of the evidence, is based upon false or pernicious evidence or to prevent a miscarriage of justice." Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007). In the context of damages, a new trial is generally granted when the trial court finds that the damages awarded by the jury are "grossly excessive or monstrous, clearly not supported by the evidence or based only on speculation or guesswork." See Monsanto Co. V. Ralph, 382 F.3d 1374, 1383 (Fed. Cir. 2004). When an award of damages justifies a new trial, the trial court may, within its discretion, "grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur." Fenner v. Dependable Trucking Co., 716 F.2d 598, 603 (9th Cir. 1983). If the prevailing party accepts remittitur, judgment must be entered in the lesser amount. Id. This allows the party to avoid the delay and expense of a new trial when the jury's verdict is excessive in relation to the evidence found in the record. Unisplay S.A. v. Am. Elect. Sign Co., 69 F.3d 512, 519 (Fed. Cir. 1995).

ii. **Section 35(a) of the Lanham Act**

Section 35(a) of the Lanham Act controls this Court's ability to increase or decrease the Jury's verdict on actual damages and Defendants' profits. 17 U.S.C. 1117(a). Under § 35(a) a plaintiff "[may] recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." Id. Regarding actual damages, § 35(a) states that "in assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." Courts have interpreted the statutory language to prohibit a trial court from lowering a jury's award of actual damages. See Go Med. Indus. Pty., Ltd. v. Inmed Corp., 471 F.3d 1264, 1274 (Fed. Cir. 2006) ("[W]e agree with the district court that § 1117 does not allow for a downward adjustment of actual damages."); Collegenet, Inc. v. XAP Corp., 483 F.Supp.2d 1058, 1064 (D.Or. 2007) ("This provision does not allow for a downward adjustment of actual damages." (citing Go Med. Indus.)). Regarding an award of profits, however, courts have considerable leeway to increase or decrease a jury's award. Section 35(a) explains that "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. 1117(a). In so doing the Court must only make sure that "[s]uch sum in either of the above circumstances shall constitute compensation and not a penalty." Id.

**2. Discussion**

With respect to Defendants' request for remittitur or a reduced verdict pursuant to § 35(a), this Court has distilled the assertions made by Defendants in their first and second motions into three main arguments: (1) the jury's award of profits is improper because Plaintiff's expert Gary Freed's testimony concerning Defendants' profits was inappropriate, arbitrary, and unsupported; (2) the jury's award of profits is impermissible under § 35(a) because it constitutes a windfall or penalty; and (3) the actual damages awarded to Plaintiff are speculative and duplicative. The Court will consider each argument in turn.

### i. Mr. Gary Freed's expert testimony was not inappropriate, arbitrary, and unsupported

In its first and second motions, Defendants attack the testimony of Plaintiff's damages expert, Gary Freed. Primarily, Defendants attack Mr. Freed's use of a 2.131 factor to extrapolate the number of sales related to Arizona made by Defendants from data that did include a purchaser's state of residence, his use of a 36 percent factor to capture the amount of Defendants' sales to non-Arizona residents for services that were to be delivered in Arizona, and his use of both the 2.131 and 36 percent factors in tandem, labeling them as double counting. In their first motion, Defendants' challenges to this evidence are general, describing Mr. Freed's conclusions as inappropriate, arbitrary, and unsupported without citation to relevant authority or prior objections. In their second motion, Defendants level the same accusations, but support them with a never before disclosed expert report by Thomas J. Kase, CPA, and make arguments pursuant to Daubert v. Merrell Pharamaceuticals, Inc., 509 U.S. 579 (1993), and its progeny.

Defendants' leveling of these accusations for the first time in the context of post-trial motions for remittitur and a reduction of profits pursuant to § 35(a) is problematic, as motions seeking a reduction in a jury's verdict a do not present an opportunity for Defendants to substantively challenge evidence that was presented to the jury. Instead, such motions require the Court to consider the evidence that was before the jury and determine whether it supports the jury's award. Because, however, Defendants raised these issues primarily in the context of their verdict-reduction motions, the Court will dispose of them now, before moving on to Defendants' arguments which are properly brought pursuant to Rule 59 and section 35(a).

### ii. Defendants' disclosure of Mr. Kase is untimely

Defendants did not disclose Mr. Kase as an expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2). Indeed, their citation to his report marks the first time either Mr. Kase or his report have made an appearance in these proceedings. Rule 37(c)(1) of the Federal Rules of Civil Procedure is quite clear: "If a party fails to provide information or

identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Defendants' failure to comply with Rule 37(c)(1) is neither justified nor harmless. Indeed, producing an expert report for the first time, during post-trial proceedings, for the purposes of discrediting the trial testimony of the opposing sides' expert, is highly unorthodox, completely inappropriate, and makes a mockery of the rules. Consequently, all references to Mr. Kase and his expert report are to be stricken from the record and this Court will give no consideration to Defendants' arguments predicated on Mr. Kase or his report.

### iii. Defendants' <u>Daubert</u> Challenge is untimely

Similarly, Defendants have used their post-trial motion to assert, for the first time, a challenge under <u>Daubert v. Merrell Pharamaceuticals, Inc.</u>, 509 U.S. 579 (1993). "In Daubert, the Supreme Court charged trial judges with the responsibility of acting as gate-keepers to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" <u>U.S. v. Finley</u>, 301 F.3d 1000, 1008 (9th Cir. 2002) (quoting <u>Daubert</u>, 509 U.S. at 589). Courts could hardly be described as gate-keepers if litigants could challenge evidence for the first time long after the gate has been opened and the evidence has been let through, and presented to the jury without objection. By failing to raise their <u>Daubert</u> objections to Mr. Freed at trial, Defendants have waived their right to make such a challenge in post trial motions. <u>See Marbled Murrelet v. Babbitt</u>, 83 F.3d 1060, 1067 (9th Cir. 1996) ("[T]he appropriate time to raise *Daubert* challenges is at trial. By failing to object to evidence at trial and request a ruling on such an objection, a party waives the right to raise admissibility issues on appeal."). Had Defendants wished to challenge Mr. Freed's testimony and methodology they should have, at a minimum, done so during trial.[1]

---

[1] At oral argument Defendants attempted to blame their failure to make the appropriate challenges to Mr. Freed's expert testimony on Plaintiff. This argument is disingenuous at best. It is true that the substance of Mr. Freed's testimony was disclosed to Defendants only during trial. This, however, was a result of Defendants failure to disclose their expert,

Accordingly, this Court will not consider Defendants' <u>Daubert</u> arguments when determining whether remittitur pursuant to Rule 59 or a decrease in profits pursuant to § 35(a) is appropriate. This prohibition includes Defendants' arguments concerning the 2.131 factors, 36% factor, and double counting. Defendants' characterization of this evidence and testimony as inappropriate, arbitrary, and unsupported necessarily implicates the types of considerations that underlie the <u>Daubert</u> test and cannot properly be raised post-trial.[2]

## 2. Defendants' Penalty and Windfall Arguments

Defendants argue that a remittitur is appropriate because the jury's award of of $2,500,004 in Defendants' profits is a penalty and is, therefore, prohibited by § 35(a).[3] Section 35(a) states that an award of profits must constitute compensation and not a penalty. Additionally, the Ninth Circuit has cautioned that "[w]hen awarding profits . . . Plaintiff is not ... entitled to a windfall." <u>Lindy Pen Co., Inc. v. Bic Pen Corp.</u>, 982 F.2d 1400, 1405 (9th

---

Lilliam DeJesus during the appropriate discovery period. Instead of striking Ms. DeJesus as a witness, the Court allowed Plaintiff to depose her and granted Plaintiff permission to call an expert rebuttal witness, who turned out to be Mr. Freed. (Dkt. #307). Plaintiff was only able to depose Ms. DeJesus on the eve of trial. (Dkt. #326). Only after that deposition was Mr. Freed able to reach his expert conclusions. To be sure, the Court found this situation to be sub-optimal, but it was initially caused by Defendants' failure to disclose, not Plaintiff's. Additionally, the record shows that Plaintiff gave Defendants the data Mr. Freed later testified to at trial prior to that testimony. (<u>See</u> Dkt. #409).

[2]The Court notes that Defendants did, in fact, make two objections to Mr. Freed's use of the 36 percent factor on the grounds of "Kumho." The Court overruled these objections. and Defendants did not re-urge its Kumho objections in a Rule 50(a) post trial motion, causing them to be waived. See <u>E.E.O.C. v. Go Daddy Software, Inc.</u>, 581 F.3d 951, 961 (9th Cir. 2009) ("[A] party cannot properly raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." (internal quotations omitted)).

[3]Additionally, to the extent that Defendants intend to take issue with the fact that the jury, not this Court, determined the amount of profits Defendants earned from their infringement of Plaintiffs' trademark, the Court notes that Defendants did not object to the jury instructions or verdict form on this ground. Their failure to object constitutes a waiver of those arguments. <u>See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1109 (9th Cir. 2001) (finding that by failing to object at trial, party waived its right to object post trail to a jury charge and verdict form).

Cir. 1993) (quoting <u>Bandag, Inc. v. Al Bolser's Tire Stores</u>, 750 F.2d 903, 918 (Fed. Cir. 1984)). Although technically addressed towards two different outcomes—a windfall versus a penalty—the Court finds these two phrases are nothing more than different sides of the same coin. It stands to reason that an award of profits is a penalty if it is not compensatory in nature. And, if the award unfairly penalizes a defendant, then it is likely a windfall for the plaintiff. By authorizing courts to lower an excessive award of profits or raise an award that is inadequate, § 35(a) places the responsibility for policing the line between a compensatory award and one that is a windfall or a penalty with the trial judge. 15 U.S.C. 1117(a) ("[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."). Accordingly, the Court will consider whether or not the jury's award of profits was excessive in light of the evidence presented to the Jury.

As a preliminary matter, most of Defendants' arguments regarding windfall and penalty are predicated on their disagreement with the methodology employed by Mr. Freed to determine what percentage of Defendants' customers, and therefore their profits, resulted from Defendants' infringement of Plaintiff's trademark. As has already been explained, in considering whether or not the jury's award of profits was excessive, the Court may only consider the evidence that was before the jury; it cannot base its conclusions on any of Defendants' arguments concerning the methodology underlying Mr. Freed's expert testimony.

Turning to the evidence, Defendants seems to ignore the allocation of the burden of proof concerning profits. When seeking profits, the Plaintiff's only burden is to prove the Defendants' gross revenues. <u>See</u> 15 U.S.C. 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only."). The burden falls on the Defendant to prove all deductions and expenses that it believes are necessary to reach an accurate calculation of profits. <u>Id.</u> ("[D]efendant must prove all elements of cost or deduction claimed."); <u>Maier Brewing Co. v. Fleischmann Distilling Corp.</u>, 390 F.2d 117, 124 (9th Cir. 1968) ("the defendant has the burden of proof as to any deductions from his gross sales."). Plaintiff met

its burden, putting on evidence showing Defendants' gross revenues and putting on Mr. Freed's testimony concerning what portion of those revenues were attributable to infringement. If Defendant is upset with the jury's determination of its profits, this ultimately reflects its failure to adequately meet its burden of proving which sales were not attributable to its infringement. See Nintendo of America v. Dragon Pacific Intn'l, 40 F.3d 1007, 1012 (9th Cir. 1994) ("The burden is upon Defendant to prove that sales were demonstrably not attributable to the infringing mark.").[4]

Ultimately, the jury needed to make a credibility determination, which it did. It determined that the amount of profits was, $2,500,004, which was in between the minimum and maximum amounts suggested by Gary Freed. This suggests to the Court that the jury took its responsibility seriously, taking into account some of the deductions from gross profits suggested by Defendants. Because the award appears to have been made in light of the evidence and is not beyond the possible amount of profits earned by Defendants as a result of their infringement of Plaintiff's trademark, this Court cannot conclude it was a penalty or a windfall.

Similarly, Defendants seem to argue that this Court should reduce the Jury's award of profits because it is too speculative. The case law Defendants cite regarding speculativeness, however, relates to an award of actual damages under § 35(a), not profits. Accordingly, the Court will assume that Defendants' reference to the speculative nature of the profits award is brought pursuant to its Rule 59 motion, as Rule 59 allows this Court to

---

[4]Defendants also argue that Mr. Freed's testimony concerning incremental operating expenses likely resulted in the jury incorrectly calculating profits. The jury instructions informed the jury that it should deduct operating expenses and overhead when calculating Defendants' profits. Mr. Freed testified concerning the theory of incremental costs, which holds that operating expenses should be calculated by considering expenses incurred only as a result of Defendants' sales stemming from infringement. Plaintiff asserts that the concept of incremental sales is generally accepted and has been peer reviewed, but that is besides the point as Defendants failed to object to Mr. Freed's testimony concerning incremental operating expenses at trial. Once again, Defendants cannot attack Mr. Freed's methodology through post trial motions when they have failed to make the proper record.

grant a new trial or order a remittitur when a jury award is based on guesswork or speculation.   See Monsanto Co. V. Ralph, 382 F.3d 1374, 1383 (Fed. Cir. 2004) (noting remittitur is appropriate only where award is "based only on speculation or guesswork."). Having reviewed the record, the Court does not believe the jury's award is overly speculative.

As this Court has noted, the Jury's award is predicated on the expert testimony of Mr. Freed, and that award falls squarely within the estimate of profits Mr. Freed presented to the Jury.   The question, then, is whether or not Mr. Freed's various schedules are overly speculative.   The Court finds that they are not.   While it is true that Mr. Freed's model utilized various factors—the 36% and 2.131 factor—to account for sales to out of state residents that were the result of Defendants' infringement, they do not render the Jury's verdict overly speculative.   First, the Court notes that Defendants were only able to provide Plaintiff with half of the pertinent financial records, the other half having been destroyed when the Defendants' computer system crashed.   Additionally, a large part of the records with which Mr. Freed did work lacked the home state of the purchaser.   Mr. Freed was forced, therefore, to resort to extrapolation to come up with an accurate assessment of the Defendants' profits stemming from their infringing activities.   Extrapolation necessarily entails a degree of speculation, that cannot be avoided.   Speculation does not, however, render extrapolation invalid as a means by which to present evidence.   See e.g., U.S. v. Williams, 989 F.2d 1061, 1074 (9th Cir.1993) ("The extrapolation relied on by the government and accepted by the district court was a reasonable one based on evidence of a very well-equipped methamphetamine lab.").   Mr. Freed's extrapolated data was not pulled from thin air.   Instead, it was based on Defendants' sales data encompassing half of the time period in question.   The Court does not find that such extrapolation renders Mr. Freed's testimony so speculative as to necessitate remittitur or a new trial.

/ / /

### 3. The award of damages was neither speculative, unsupported by the evidence, nor duplicative

In their first and second motions Defendants argue that the jury's award cannot stand because Plaintiff's damages are speculative and not, therefore, supported by evidence, and the jury's award of profits and actual damages at the same time is a prohibited duplicative recovery.[5]  As a preliminary matter, the Lanham Act does not permit this Court to decrease the jury's verdict of actual damages.    See Go Med. Indus. Pty., Ltd. v. Inmed Corp., 471 F.3d 1264, 1274 (Fed. Cir. 2006).  Additionally, § 35(a) explicitly states that a plaintiff may recover both actual damages and profits. 15 U.S.C. 1117(a).  The Court assumes, therefore, that Defendant's arguments concerning a speculative and duplicative award are made pursuant to its  Rule 59 motion.  Under Rule 59 the Court may order a new trial or grant a remittitur when the damages award is "grossly excessive or monstrous, clearly not supported by the evidence or based only on speculation or guesswork."  See Monsanto Co. V. Ralph, 382 F.3d 1374, 1383 (Fed. Cir. 2004).

The Court will address Defendants' charges of a duplicative award first.  As the Court just mentioned, it is certainly not error to have allowed Plaintiff to recover profits and actual damages.  The Court notes, however, that Defendants did not object to the jury instructions or verdict form concerning either profits or damages individually or together.   Their failure to object constitutes a waiver of any argument that the jury was misinstructed.  See Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1109 (9th Cir. 2001) (finding that by failing to object at trial, party waived its right to object post trial to a jury charge and verdict form).  Additionally, the Court notes that the instruction titled "Defendants' Profits" directed the jury that it "may not, however, include in any award of profits any amount that [it] took into account in determining actual damages," mitigating any concern about a duplicative recovery.  (Dkt. #365); see Simmons v. South Carolina, 512 U.S. 154, 171, 114 (1994) ("[J]uries ordinarily are presumed to follow the court's instructions.").

---

[5]Defendants do no distinguish between the two damage awards made by the jury.  The jury awarded Plaintiff  $2,500,000 in damages under §32(a) and $1,000,000 under §43(a).

The Court next turns to Defendants' arguments that the jury's awards of damages were speculative and unsupported by the evidence. Defendants argue, in essence, that Plaintiff failed to provide evidence quantifying its actual damages. It is true that Plaintiff did not introduce any evidence regarding its lost profits. This, however, was to be expected, as this Court allowed Plaintiff to receive Defendants' profits precisely because proving Plaintiff's lost profits would be too difficult. (Dkt. #262); See Lindy Pen Co., 982 F.2d at 1407 (noting that when proving lost profits is too difficult "a court may award damages based on defendant's profits on the theory of unjust enrichment.").

Lost profits, however, were not the only factor the jury was permitted to consider when determining actual damages. The instructions also told the jury to consider: (1) injury to the Plaintiff's reputation; (2) injury or loss of Plaintiff's goodwill, including injury to general business reputation; (3) the expense of preventing customers from being deceived; and (4) the cost of future corrective advertising reasonably required to correct public confusion caused by the infringement. (Dkt. #365). To this end, Plaintiff introduced evidence concerning its advertising expenditures between 1997 to 2007, i.e. money spent promoting its mark. These exhibits show that Plaintiff spent hundreds of thousands of dollars promoting its mark. (See Trial Exhbs. 152–154). A jury may properly take such expenditures into account when attempting to quantify the loss of a plaintiff's goodwill. See Smith Corona Corp. v. Pelikan, Inc., 784 F.Supp. 452, 476 (M.D.Tenn.1992) ("in order to calculate damage to a corporation's goodwill due to a competitor's false advertising, one must take into account the amount of money expended by the injured corporation in the promotion of its trademark.").

Additionally, the Court notes that actual damages under the Lanham Act are calculated based on tort-law principles. Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1408 (9th Cir. 1993) ("Trademark remedies are guided by tort law principles."). A well know principle of tort law is that loss of goodwill or reputation is difficult to quantify. Days Inns Worldwide, Inc. v. Patel, 2005 WL 4655381, *5 (S.D. Cal., Feb. 7, 2005) ("the loss of goodwill caused by consumer confusion is . . . difficult to quantify."); see RESTATEMENT

(SECOND) OF TORTS § 912 cmt.b ("For harm to . . . reputation, compensatory damages reasonably proportioned to the intensity and duration of the harm can be awarded without proof of amount other than evidence of the nature of the harm); id. ("There is no direct correspondence between money and harm to . . . reputation."). Accordingly, after determining the presence of an injury, the jury had discretion to make a reasonable estimate of the harm caused to Plaintiff's reputation by Defendants. RESTATEMENT (SECOND) OF TORTS § 912 cmt.b ("The discretion of the judge or jury determines the amount of recovery, the only standard being such an amount as a reasonable person would estimate as fair compensation.").

Based on the voluminous evidence presented at trial of Plaintiff's stellar business reputation and the steps taken to achieve that reputation, this Court is unable to say the jury's awards are unreasonable. The jury learned how Skydive Arizona grew from a small business into one of the largest and most well respected jump centers in the world. Accordingly, the jury may well have determined that Plaintiff's reputation was very valuable and that any harm to its reputation would be equally costly. Likewise, Plaintiff put on evidence of phone calls it received from angry customers of Defendants' business who mistakenly believed they have been deceived by Skydive Arizona. The jury may have concluded that for every customer who called Skydive Arizona to complain, many others elected to keep their grievance private, suggesting the scope of the harm could have been quite large. Additionally, the jury may have determined that the cost of future corrective advertising to correct the public confusion caused by the infringement will be quite costly as well.

In the end, there is no way for this Court to step inside the mind of the jury. For that reason, a jury's verdict should not be overturned lightly. While there are plausible arguments to be made that the jury's verdict was too high, this Court does not find it goes against the clear weight of the evidence or would in any way constitute a miscarriage of justice. Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (noting that Court should only order new trial or remittitur "if the verdict is contrary to the clear weight of the evidence, is based

upon false or pernicious evidence or to prevent a miscarriage of justice."). Accordingly, Defendants' motion for remittitur or a new trial is denied.

## B. Defendant's Renewed Motion for Judgment as a Matter of Law

A renewed motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure ("Rule 50") is properly granted "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002). The "jury's verdict must be upheld if its is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." Id. Accordingly, a court "can overturn the jury's verdict and grant such a motion only if there is no legally sufficient basis for a reasonable jury to find for that party on that issue." Costa v. Desert Palace, Inc., 299 F.3d 858, 859 (9th Cir. 2002) (internal citations omitted). If there is "sufficient evidence before the jury on a particular issue, and if the jury instructions on the issue were correct, then the jury's verdict must stand." Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1014 (9th Cir. 1985).

In ruling on a motion for judgment as a matter of law, the trial court must view all evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in the favor of the nonmovant, and disregard all evidence favorable to the moving party that the jury is not required to believe. Costa, 299 F.3d at 859. The court "may not substitute [its] view of the evidence for that of the jury," nor can the court "make credibility determinations nor weigh the evidence." Id. The "high hurdle" of the 50(b) standard thus "recognizes that credibility, inferences, and fact-finding are the province of the jury, not [the] court." Id. Because, however, a Rule 50(b) motion renews a previously filed Rule 50(a) motion, the Court's review is limited by the scope of the preceding Rule 50(a) motion. See E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009) ("[A] party cannot properly raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." (internal quotations omitted)).

In their second motion, pursuant Rule 50, Defendants request that the Court set aside the jury's verdict and enter judgement as a matter of law for Defendants. It is not clear, however, as to what issues Defendants' motion is directed, as the only mention of Rule 50 is in a single paragraph at the end of the motion that merely recites the Rule 50 legal standard. That being said, and has been discussed with regards to Defendants' <u>Daubert</u> arguments, many of the arguments made in both the first and second motions read as if brought under Rule 50. These motions contain numerous challenges to the sufficiency of the evidence and requests for judgment as a matter of law. For example, in their first motion Defendants challenged the evidence given by Mr. Freed (these challenges have already been discussed), alleged numerous bases on which the jury's awards are unsupported by evidence, and mention estoppel. In its second motion, Defendants made many of the same arguments, adding a claim under <u>Daubert</u>. Whatever their respective merits, these claims must fail, as they are procedurally barred by Defendants' failure to raise them in a Rule 50(a) motion. <u>Go Daddy Software</u>, 581 F.3d at 961. And, even if not procedurally barred, Defendants' claims do not present a sufficient basis to grant any relief pursuant to Rule 50. Defendants request for relief pursuant to Rule 50 is denied.

## III. PLAINTIFF'S MOTION FOR AN AWARD OF INCREASED DAMAGES AND PROFITS

The Court next turns to Plaintiff's Motion for an Award of Increased Damages and Profits. Pursuant to § 35(a), Plaintiff asks this Court to increase the amount of profits awarded by the jury and treble the actual damages award. <u>See</u> 15 U.S.C. 1117(a) ("In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."); <u>id.</u> ("If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."). The Court will address profits, before moving on to actual damages.

/ / /

### A. Profits

Plaintiff's Motion is predicated, at least in part, on a statement this Court made in its Summary Judgement Order: "the Court agrees with Defendants that in the absence of bad faith and willful infringement (which has yet to be determined), the Court should limit Plaintiff's recovery to those profits obtained from Defendants' business operations in Arizona, i.e. Defendants' Arizona-related sales."[6] Because the jury determined that Defendants' actions with respect to Plaintiff's false advertising and trademark infringement were committed wilfully, Plaintiff now requests that this Court increase the jury's award of profits on its trademark and false Advertising claims, taking into account sales made by the Defendants unrelated to its infringement of Skydive Arizona (i.e. their non-Arizona profits). Accordingly, this Court must determine whether additional profits should be awarded as to both Plaintiff's trademark infringement and false advertising claims.

As an initial matter, this Court must determine how much in profits should be awarded to Plaintiff on its Lanham Act § 43(a) claim (false advertising). At trial, the jury was not asked to decide the amount of Arizona-based profits Defendants' earned from their false advertising. Instead, that decision was left with this Court. At oral argument, however, Plaintiff argued that the jury's determination regarding the amount of profits Defendants' earned by infringing Plaintiff's trademark—$2,500,004—should inform the Court's decision regarding the proper amount of profits that should be awarded. The Court agrees; Plaintiff proved gross profits and Defendants did not and have not put on evidence distinguishing

---

[6]The jury instructions directed that the jury could award Plaintiff profits based on Defendants' infringement of the Skydive Arizona trademark, not just for Defendants' Arizona related sales. This change from the Court's Summary Judgement Order reflected testimony that came out during trial which showed that Defendants' targeted customers in Nevada and sent them to dive centers in Arizona. Thus, even though the sale made by Defendants was not directly attributable to the state of Arizona, it still could properly be considered to have been made based on an infringement of Plaintiff's trademark. Similarly, trial testimony also demonstrated that Plaintiff garners many of its sales from out-of-state customers hoping to make their first skydive at Skydive Arizona. The Court concluded it was possible, therefore, that Defendants' infringement could affect persons located in states that are not in close proximity to Arizona.

between profits they earned from the infringement versus the false advertising. Accordingly, it will follow the Jury's decision and award Plaintiff $2,500,004 in Defendants' profits on its false advertising claim.[7] The Court now must turn to Plaintiff's request for an award of additional profits.

As explained at oral argument, the post trial motions filed by the Parties have given the Court an opportunity to reexamine the legal basis for its conclusion regarding profits made during the summary judgment phase of this trial. In that order, the Court seemed to suggest that under a theory of deterrence, if Plaintiff proved willfulness, Plaintiff would be entitled to an accounting of Defendants' nationwide profits, i.e. profits earned by Defendants not attributable to Defendants' infringement of Skydive Arizona or acts of false advertising directed towards Skydive Arizona. Having further considered the applicable law, the Court suggested that an accounting of Defendants' nationwide profits is not appropriate. Quite simply, the Court cannot increase the profits awarded in this case based on profits earned by the Defendants that are not related to this case and were not proven during the course of this litigation.

As the Ninth Circuit has explained on numerous occasions, the purpose of an accounting is to remove the economic incentive to violate the Lanham Act by making violations of the Act unprofitable. Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135 (9th Cir.1986) (noting that the purpose of § 35(a) is to "take all the economic incentive out of trademark infringement."); Playboy Enters., Inc. v. Baccarat Clothing Co., Inc., 692 F.2d 1272, 1274 (9th Cir. 1982) ("the trial court's primary function should center on making any violations of the Lanham Act unprofitable to the infringing party."); See Maier Brewing Co. v. Fleischmann Distilling Corp., 390 F.2d 117, 123 (9th Cir. 1968) ("It would seem fairly evident that the purposes of the Lanham Act can be accomplished by making acts of

---

[7]Plaintiff conceded at oral argument that it was not seeking a double recovery of profits and that any award of Defendants' profits made by this Court based upon the false advertising claim, up to $2,500,004, would be treated as indivisible from the $2,500,004 in Defendants' profits awarded to Plaintiff on its claim for trademark infringement.

deliberate trade-mark infringement unprofitable."). Plaintiff argues that in order to make sure Defendants do not profit from their violations of the Lanham Act, this Court must disgorge profits that Defendants earned through conduct carried out in other states and directed towards other companies and individuals because that conduct is similar to conduct constituting the Lanham Act violations committed against Plaintiff. In other words, Plaintiff contends that Section 35(a) permits this Court to make Defendants entire business scheme unprofitable, not just the violations for which Defendants have been found liable.

Plaintiff's argument is primarily supported by citation to the Ninth Circuit's decision in Maier. Maier, however, does not support the type of accounting sought by Plaintiff. Prior to Maier, trial courts only granted an accounting of profits in direct competition cases; cases where a defendant's profits served as a rough proxy for a plaintiff's lost profits. See Maier, 390 F.2d at 121–22. In non-competition cases, where a defendant's use of the trademark did not cause plaintiff to lose profits, a plaintiff's avenues for relief were limited to actual damages, which can be very difficult to prove, and an injunction. Id. As a result, defendants were often able profit from the use of another's mark. Id. Thus, when the Maier court stated that "it is fairly apparent that the use of an accounting of profits solely as a means of compensating the trade-mark registrant for sales which have been diverted to the infringer is somewhat less than wholly effective in fulfilling the goals of the Lanham Act" it was referring to cases involving non-competing parties. Id. at 123. To remedy this situation, the Maier court adopted unjust enrichment as a new rationale for granting an accounting of profits, recognizing that trademarks have inherent value that should be protected even when the infringement does not cut into the trademark owners profits.[8] Id. ("In the case where there is direct competition between the parties, [the goals of the Lanham Act] can be

---

[8]Generally, an award of profits based on unjust enrichment is granted "only in those cases where the infringement is willfully calculated to exploit the advantage of an established mark." Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1405 (9th Cir. 1993)(internal quotation omitted). In this case, the jury concluded that Defendants' acts of false advertising and trademark infringement were committed wilfully.

accomplished by an accounting of profits based on the rationale of a returning of diverted profits. In those cases where there is infringement, but no direct competition, this can be accomplished by the use of an accounting of profits based on unjust enrichment rationale.") Nowhere in its opinion, however, did the Maier court purport to expand the definition of profits to include profits earned independent of the infringement.

Accordingly, whether an accounting is granted under a diverted profits or unjust enrichment rationale, Plaintiff is still only entitled to profits the Defendants earned as a result of their infringing activity. This conclusion is supported by the Ninth Circuit's decisions in Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132 (9th Cir.1986), and Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc., 692 F.2d 1272 (9th Cir. 1982). In Polo Fashions the Ninth Circuit increased an award of profits because the trial court's decision left the defendant with $8,820 in profits from its violation of the Lanham Act. 793 F.2d at 1135. The Polo Fashions Court, however, only increased the profits award by $8,820, the exact amount necessary to make the defendant's violation unprofitable and, as the Court put it, "remove the incentive [to violate the Lanham Act]." Id. In so doing, the court did not suggest it had the authority to award more than $8,820 as a means to deter the defendant's conduct. Similarly, in Playboy Enterprises, the court noted that, when determining how much to access in profits, trial courts should ask themselves, "[w]ould a profit seeking businessperson, not unwilling to violating federal law, pay ten cents to make one dollar?" 692 F.2d at 1275. Despite Plaintiff's contentions, this quote does not support awarding profits beyond those derived from infringement. On the contrary, the Court was referring to the fact that "the appropriate computation yields a profits award of $120,000 in contrast to the trial court's $12,750 remedy." Id. Plainly, then, the Playboy Enterprises court was not implying that a trial court can award an amount of profits greater than the amount attributable to the infringement. Instead, it took issue with the fact that the trial court's decision allowed the defendant to profit from its Lanham Act violation.

In sum, no matter what rationale is employed, this Court may only award profits the Defendants earned by violation the Lanham Act. In the instant case, the jury found that

Defendants violated the Lanham Act by infringing Plaintiff's Skydive Arizona trademark, and this Court granted Summary Judgment in favor of Plaintiff on its false advertising claim based on Defendants' use of a website for "Arizona Skydiving," and other websites for fictitious skydiving centers in Phoenix, Tempe, Scottsdale, Mesa, Glendale, Yuma, Flagstaff, Chandler, Peroria, and Tucson, i.e. its Arizona-related activity. At oral argument, Plaintiff seemed to concede, correctly, that this Court could not rightfully increase the amount of profits awarded on its trademark infringement claim. Plaintiff argued strenuously, however, that the false advertising claim was different and additional profits could be awarded. This Court, however, is not convinced.

Regarding the false advertising claim, Plaintiff contends that in other states throughout the country, Defendants have engaged in conduct nearly identical to the conduct that resulted in this Court finding Defendants liable for false advertising. Plaintiff claims a further award of profits is warranted because Defendants' similar conduct has harmed Plaintiff on the occasions when it has loaned its planes to skydiving drop zones in those other states. Plaintiff's contentions concerning Defendants' conduct outside of or not directed at its business operations in Arizona cannot justify a further award of profits. Plaintiffs have only proven Lanham Act violations as to Defendants' Arizona websites. As explained above, it would be entirely improper to deprive Defendants of profits earned for conduct that has not been proven to violate the Lanham Act. Plaintiff's arguments to the contrary are predicated on what this Court has already determined is Plaintiff's misapplication of <u>Maier</u>. Additionally, to the extent the Plaintiff believes it proved liability at the post-trial proceeding held on March 3, 2010, the Court finds that it would be improper to determine liability under the Lanham Act based merely on a post-trial proceeding. Any further award, then, would clearly constitute an impermissible penalty and go beyond this Court's mandate to make violations of the Lanham Act unprofitable. <u>See</u> 15 U.S.C. 1117(a) (noting that any award of profits " shall constitute compensation and not a penalty.").

In sum, because the jury instructions directed the jury to award all profits based on the infringement of Skydive Arizona, which Plaintiff concedes is the same amount as the

profits it made from its false advertising, there are no more profits left from which an award may properly granted.  Accordingly, Plaintiff's motion for increased profits is denied.

### B.    Actual Damages

Section 35(a)  permits this Court to increase actual damages up to three times the amount awarded by the jury.   See 15 U.S.C. 1117(a) ("In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.").   Such an award, however, is never automatic and is dictated by equitable concerns. See Lindy Pen Co., 982 F.2d at 1405, 1409.  In its discretion, the Court finds that the circumstances of this case warrant an increased award of damages.

Although willfulness is not a prerequisite for increasing an award of actual damages, the Court notes the jury's finding of willfulness to emphasize the purposely deceitful nature of the Defendants' conduct in this case.  Plaintiff introduced evidence and elicited testimony showing that numerous parties, including the United States Parachute Association (USPA), Betsy Barnhouse, and Al Gramando, contacted and asked Defendants  to cease their deceptive advertising practices, but Defendants ignored those requests, choosing instead to continue their profitable scheme, even bragging that no one could stop them.  Regarding the trademark claim, Plaintiff introduced a substantial amount of evidence showing that Defendants knew about Skydive Arizona before they infringed its trademark and utilized that trademark to confuse potential customers into doing business with Defendants, even going so far as to instruct phone operators to answer affirmatively if a caller asked if he or she was speaking with Skydive Arizona.  And, based on their testimony in this case, the Court finds that Defendants completely fail to appreciate or accept the wrongfulness of their conduct. Defendants seeming disregard for the people they harmed or the reputation they sullied, convinces this Court that an increase in the amount of actual damages is proper and, as a result, will double each damage award.  Accordingly, the judgement will reflect an award of $5,000,000 in actual damages on Plaintiff's trademark claim and $2,000,000 in actual damages on Plaintiff's false advertising claim.

## IV.    Attorney's Fees

"The Lanham Act permits an award of attorneys' fees to the prevailing party in 'exceptional cases.'" <u>Gracie v. Gracie</u>, 217 F.3d 1060, 1068 (9th Cir. 2000) (quoting 15 U.S.C. § 1117(a) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.")). "While the term 'exceptional' is not defined in the statute, generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful."<u>Id.</u> (quoting <u>Lindy Pen Co., Inc. v. Bic Pen Corp.</u>, 982 F.2d 1409 (9th Cir.1993)).   Accordingly, a district court's decision to award attorneys' fees "flows quite naturally from the jury's finding of willful infringement and the legal standard for "exceptional cases" under § 1117." <u>Id.</u>

In opposition to Plaintiff's motion, Defendants  argue that intentional infringement in insufficient to sustain an award of attorneys' fees.  This proposition is not without merit, but it is besides the point.  <u>see</u> <u>Watec Co., Ltd. v. Liu</u>,  403 F.3d 645, 656 (9th Cir. 2005) (holding that a jury finding on intentional infringement "does not necessarily equate with the malicious, fraudulent, deliberate or willful conduct").  In this case, unlike in <u>Watec</u>, the jury specifically determined that Defendants' willfully violated Lanham Act sections 43(a) and 32.   And, this Court has no trouble concluding that the Jury's  conclusions regarding willfulness are amply supported by the record.  <u>See</u> <u>Sealy, Inc. v. Easy Living, Inc.</u>, 743 F.2d 1378, 1384 (9th Cir.1984) (affirming entitlement to attorney's fees where record contained evidence of intent to deceive consumers).  As the Court explained when discussing its decision to increase Plaintiff's actual damage award, the conduct for which Defendants were found liable is particularly egregious.  Accordingly, this Court finds this is an exceptional case under section § 35(a) for which an award of attorney's fees is appropriate.

Additionally, the Court will allow Plaintiff to recover attorney's fees for their time spent preparing to defend against Defendants' counterclaims.  On the first day of trial Defendants informed this Court and Plaintiff for the first time that they might drop their counterclaims against Plaintiff.  Only after both Parties made their opening statements, in which the Parties discussed the counterclaims, did Defendants' elect to drop those claims.

Defendants claim they dropped their counterclaims because this Court indicated that defense counsel's opening statement had opened the door to evidence which might prejudice Defendants' ability to defend against Plaintiff's claims. Defendants knew of this risk, however, long before trial, admitting in their responsive briefing that the Court informed them during oral argument held on May 20, 2009, that Plaintiff's introduction of certain out-of-state information would be determined by what the Defendants' attempted to introduce at trial.

This Court is not satisfied by Defendants' explanation of their decision as mere trial strategy. After oral argument in May, 2009, Defendants had enough information to determine if the risk of continuing with their counterclaims—the possible introduction of prejudicial evidence—outweighed the possible reward. A decision to drop the counterclaims then would have been strategy. By delaying until the very last second, Defendants appear to have treated their counterclaims as a bargaining chip or tool to leverage a better outcome against Plaintiff, only dropping the claims when it became one hundred percent obvious their gambit had not paid off. Defendants' delay assuredly caused Plaintiff to incur numerous trial preparation expenses that could have been avoided, and the Court notes, wasted valuable judicial resources.

It appears that Defendants' conduct was, at least in part, gamesmanship meant to stymie Plaintiff's successful prosecution of its Lanham Act claims. Such misconduct constitutes grounds for finding a case exceptional and awarding attorney's fees pursuant to Section 35(a). See Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 222 (2d. Cir. 2003) (noting that "misconduct in the course of trademark litigation [can] support an award of attorney's fees"). Accordingly, this Court will allow Plaintiff to recover attorney's fees expended in defending against Defendants' counterclaim accrued after May 20, 2009, the time at which Defendants could strategically have determined that the risk of continuing with their counterclaims was not worth the potential reward.

After judgment is entered, in accordance with LRCiv. 54.2, Plaintiff is directed to file its memorandum in support of its fees request within 60 days of the entry of judgment. This

filing should identify and allocate to the greatest extent possible, in detail, the amount of money Plaintiff's attorneys charged to Plaintiff for work done on the Lanham Act claims for false advertising and trademark infringement, as well as any fees incurred in defending against Defendants' counterclaims incurred after May 20, 2009. The Court reminds Plaintiff that it will only compensate it for reasonable costs, and that "[t]he Court's directive to . . . present evidence of [its] just costs and expenses [is] not an invitation to indulge in overreaching." See Mehney-Egan v. Mendoza, 130 F. Supp. 2d 884, 885 (E.D. Mich. 2001).

**Accordingly,**

**IT IS HEREBY ORDERED** denying Defendants' Motion to Reduce Jury Verdict. (Dkt. #376)

**IT IS FURTHER ORDERED** denying Defendants' Motion for Judgement not Withstanding the Verdict, Accounting, Remittitur, or in the Alternative, a New Trial. (Dkt. #395).

**IT IS FURTHER ORDERED** granting Plaintiff's Motion for Attorney Fees pursuant to 15 U.S.C. §1117. (Dkt. #371). Plaintiff is directed to filed a memorandum in support of its fees request within 60 days of the entry of judgment.

**IT IS FURTHER ORDERED** granting in part and denying in part Plaintiff's Motion for an Award of Increased Damages and Profits. (Dkt. #396). The Court grants Plaintiff's request for an award of increased damages, but denies Plaintiff's request for an award of increased Profits.

/ / /

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgement accordingly. The judgment should reflect the Jury's verdict, but make the following changes and additions. Awarding Plaintiff $2,500,004 in profits on its Lanham Act § 43(a) claim (false advertising); doubling the jury's award of $2,500,000 in actual damages on Plaintiff's Lanham Act § 32 claim (trademark infringement) to $5,000,000; and doubling the jury's award of $1,000,000 on its Lanham Act § 43(a) claim to $2,000,000.

DATED this 31st day of March, 2010.

Mary H. Murguia
United States District Judge