**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Skydive Arizona, Inc., | No. CV-05-2656-PHX-MHM |
| Plaintiff, | **PERMANENT INJUNCTION** |
| vs. | |
| Cary Quattrocchi, et al., | |
| Defendants. | |

Currently before the Court is Plaintiff Skydive Arizona's request for injunctive relief. (Dkt. #420). This case went to jury trial in late September of 2009, and the jury reached its verdict on October 2, 2009. The jury found Defendants liable for violations of Lanham Act §§ 32 (trademark infringement), 43(a) (false advertising), and 43(d) (cybersquatting). The Court issued an order on March 31, 2010, resolving the issues raised by the Parties in their post-trial motions. It did not at that time, however, consider the issue of injunctive relief as it had only received briefing concerning the issue from Plaintiff Skydive Arizona on March 24, 2010, (Dkt. #420), and from Defendants' on March 31, 2010.[1] (Dkt. #422). Now, having

---

[1] In its response memorandum, Defendants argue that this Court should not enter an injunction because Plaintiff's request for such relief is untimely and was not in the Joint Pre-Trial order. (Dkt. #422, p.2) The Court has considered both arguments and finds them meritless.

had an opportunity to review both Parties briefs concerning injunctive relief, and having determined that oral argument is unnecessary, the Court issues the following Order.

I. DISCUSSION

A. <u>Legal Standard for Permanent Injunctive Relief</u>

Pursuant to 15 U.S.C. § 1116, district courts have the "the power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the trademark owner." <u>Perfumebay.com Inc. v. EBAY, Inc.</u>, 506 F.3d 1165, 1177 (9th Cir. 2007). A an injunction may only be entered, however, where the plaintiff demonstrates: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006). Traditionally, courts have presumed irreparable harm once a plaintiff established a likelihood of confusion. <u>See</u>, <u>e.g.</u>, <u>Vision Sports, Inc. v. Melville Corp.</u>, 888 F.2d 609, 612 n.3 (9th Cir. 1989) ("trademark infringement or unfair competition actions, once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted."). In light of the Supreme Court's decision in <u>eBay</u>, many district courts have ceased this practice, refusing to afford plaintiffs a presumption of irreparable harm. <u>See</u>, <u>e.g.</u>, <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster</u>, Ltd., 518 F. Supp. 2d 1197, 1211 (C.D. Cal. 2007); ("[T]he presumption of irreparable harm no longer inures to the benefit of Plaintiffs."); <u>IMX, Inc. v. LendingTree, LLC</u>, 469 F. Supp. 2d 203, 224 (D. Del. 2007) (same); <u>see also</u> <u>MDY Indus., LLC v. Blizzard Entm't, Inc.</u>, 616 F. Supp. 2d 958, 974 (D. Ariz. 2009) (same, but in a patent law case). As one such court in this circuit explained:

> The <u>eBay</u> Court plainly stated that Plaintiffs "must demonstrate" the presence of the traditional factors, and therefore have the burden of proof with regard to irreparable harm. If this Court adopted a presumption of irreparable harm in favor of Plaintiffs, then [Defendant] would effectively have the burden of

> proving the contrary. Such a rule would contravene the Supreme Court's intent that Plaintiffs establish not merely that infringement causes "harm," but how it amounts to irreparable harm.

Grokster, 518 F. Supp. 2d at 1211. The Court finds this reasoning sound and will likewise decline to apply the presumption of irreparable harm. Having so determined, the Court will now consider whether Plaintiff has satisfied the four-part test for a permanent injunction.

    B.    <u>The Four-Part Test</u>

        1.    Irreparable Harm

Plaintiff argues that Defendants' violations of Lanham Act §§ 32 and 43(a) caused it irreparable harm. In support of this argument, Plaintiff asserts that its goodwill and reputation amongst the general public has been damaged and, absent an injunction, it will further lose control over its reputation and goodwill. Injuries to goodwill and business reputation are generally considered to be intangible and, as a result, irreparable. See, e.g., Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) ("[W]e have also recognized that intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."); MySpace, Inc. v. Wallace, 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable."). Intangible injuries, such as loss of goodwill, are irreparable because quantifying their harm is, in most cases, impractical or impossible, and, as a result, such injuries cannot be fully remedied with a financial award. Cf. id. ("It is true that economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award.").

At trial, Plaintiff introduced evidence addressing the loss of goodwill and business reputation it suffered as a result of Defendants' actions. James Flynn testified that Defendants' representatives told him that the skydiving certificates he purchased from Defendants were redeemable at Skydive Arizona's Eloy, Arizona, facility, when in fact they were not. Cheryl Preston testified that she specifically searched the internet for Skydive Arizona, but was confused into believing that Defendant's website was actually Skydive Arizona's website. Ms. Preston further testified that she twice called Defendants to confirm

that the skydiving certificate she purchased was redeemable at Skydive Arizona, and that Defendants' representatives twice told her it was, when it was not. Additionally, Betsy Barnhouse testified that an angry customer of Defendants' called Skydive Arizona to complain that Skydive Arizona had ruined her Christmas, when in reality the source of the customer's displeasure were Defendants. Plaintiff also put on evidence of the difference in quality between the facilities and services advertised on Defendants websites—facilities and services that matched those offered by Skydive Arizona—and those that customers found at the jump sites to which they were directed. In light of the forgoing evidence, it is reasonable to infer that other customers of Defendants had negative experiences similar to the ones outlined above, but never called Skydive Arizona to complain or never realized that the company with which they had done business was not Skydive Arizona. As a result, this Court concludes that Plaintiff's business reputation and goodwill was unquestionably harmed by Defendants.

      Defendants argue, however, that even if Skydive Arizona suffered reputational harm, any such injury is not irreparable and, in fact, has been repaired through the jury's $2,500,000 award in damages. Defendants' position is understandable, as Plaintiff, in defending against Defendants' post-trial motion for remittitur, argued, at least in part, that the jury's damage award was not excessive or unreasonable because of the harm to its reputation and loss of goodwill. Plaintiff, however, did not attempt to quantify its reputational damages at trial, it merely put forth evidence of the fact of those damages. Ultimately, the jury was asked to consider many factors when reaching its damage awards, including injury to Plaintiff's reputation and loss of good will, the expense of preventing customers from being deceived, and the cost of future corrective advertising reasonably required to correct public confusion caused by the infringement. This Court cannot know to what extent the jury's award was meant to compensate Plaintiff solely for reputational harm versus the other factors it was to consider in calculating actual damages. At best Plaintiff has received some compensation for its reputational harm. Because of that harm's intangible nature, however, the Court cannot say Plaintiff has been fully compensated for

its injury or, more importantly, what amount of money would or could provide such compensation. It must, therefore, conclude that Plaintiff's loss of reputation and goodwill is an irreparable injury. MDY Indus., LLC v. Blizzard Entm't, Inc., 616 F. Supp. 2d 958, 974 (D. Ariz. 2009) (finding irreparable injury because plaintiff could not "determine the extent of damage caused by [defendant] to [plaintiff's] reputation and customer goodwill.").

### 2. Remedies at Law

In the context of trademark law, the second prong of the permanent injunction test—the availability of remedies at law—is closely related to the first—irreparable injury. Blizzard Entm't, Inc., 616 F. Supp. 2d at 974. This relationship exists because traditional legal remedies, such as monetary damages, insufficiently alleviate the reputational harm often caused by infringement. Id. As the Court has already noted, the damage to Plaintiff's business reputation and good will cannot be calculated with certainty. Accordingly, the Court finds that Plaintiff that remedies at law are insufficient to alleviate Plaintiff's harm.

### 3. Balance of Hardships

The primary hardship that an injunction would cause Defendants is the loss of profits stemming from its business. Where, however, such profits are the result of an infringing activity, a defendant's claim of hardship "merits little equitable consideration." Triad Sys. Corp. v. Se. Express Co., 64 F.3d 1330, 1338 (9th Cir. 1995) ( "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration.") (internal quotation and citation omitted)); see Blizzard Entm't, Inc., 616 F. Supp. 2d at 974 ("An injunction may force the closure of [the defendant's] business, but that business is based on contributory and vicarious copyright infringement. The hardship factor favors an injunction."). On the other hand, should Defendants continue to infringe Plaintiff's trademark and engage in false advertising, Plaintiff will suffer considerable hardship, as potential customers will once again be confused, business will be lost, goodwill will be further eroded, and Plaintiff will almost assuredly have to incur the expense of undertaking duplicative litigation to once again protects its rights. In light of the foregoing

considerations, the balance of hardships weighs in favor of injunction. See Castol, Inc., v. Penzoil Co., 799 F. Supp. 424, 440 (D.N.J. 1992) ("Pennzoil can assert no equitable interest in the perpetuation of an advertising campaign that is literally false.").

    4.  Public Interest

  Finally, the Court must determine if the public interest would be served by the issuance of a permanent injunction. The purpose of the Lanham Act is twofold; it protects owners by securing the goodwill of their business, and it protects the public against misleading or falsely marked goods. Maier Brewing Co. v. Fleischmann Distilling Corp., 390 F.2d 117, 120 (9th Cir. 1968) (citing S.Rep. No. 1333, 79th Cong., 2d Sess. 1-2 (1946)); see Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250, 1256 (9th Cir. 1982) ("The basic policy behind the Lanham Act is to protect customers against likelihood of confusion."). Accordingly, the public, not just the private litigant, is harmed by an inadequate response to trademark infringement or other Lanham Act violations. Playboy Enters., Inc. v. Baccarat Clothing Co., Inc., 692 F.2d 1272, 1275 (9th Cir. 1982). The only opposing public interest identified by Defendants is that in competition. While preserving competition is undoubtedly in the public's interest, it does not weigh against an injunction in this case. To the contrary, the conduct for which Defendants have been held liable—trademark infringement, false advertising, and cybersquatting—subverts competition by confusing consumers and eliminating the level playing field that is essential to our free-market system. And Defendants exploited that confusion to their competitive advantage, mitigating against their claims that an injunction will harm competition. See Blizzard Entm't, Inc., 616 F. Supp. 2d at 974 ("The public interest may favor full and honest competition, but [the defendant] ultimately is an exploiter, not a competitor."). Entry of an injunction will protect the public interest, not harm it. See Castrol, 799 F. Supp. at 440 (stating that permanent injunctive relief is appropriate to protect the public interest in a false advertising case).

  C.  The Scope of Injunctive Relief

  Having determined that equitable considerations support an injunction, this Court now turns to the scope of that injunction.

### 1. Relief for Defendants' violation of Lanham Act § 32

The Court begins by considering Plaintiff's request for injunctive relief pursuant to Defendants' violation of Lanham Act § 32, i.e. the trademark infringement. Plaintiff prays this Court enter a broad injunction that prohibits Defendants not only from utilizing Plaintiff's "Skydive Arizona" trademark, but also prevents Defendants from using the word "Arizona" in conjunction or in combination with "Skydive" or "Skydiving" on any website or any advertising or promotional materials. In a trademark infringement case, the district court has broad discretion to craft the appropriate remedy. See Coca-Cola, 692 F.2d at 1256. And in this case a broad injunction is warranted, as the litigants both offer similar services—they sell skydives. See Perfumebay.com, 506 F.3d at 1177 ("When the infringing use is for a similar service, a broad injunction is especially appropriate.").

Having determined that injunctive relief is appropriate, the minimum this Court must do is enjoin Defendants from further using Plaintiff's trademark, "Skydive Arizona." Similarly, in its Complaint, Plaintiff alleged that Defendants' use of "Skydiving Arizona," and "Arizona Skydiving" also violated its Skydive Arizona trademark and presented evidence in support of these assertions at trial. While the jury did not make a separate determination of trademark infringement concerning these marks—it just found infringement generally—it did decide that Defendants violated Lanham Act § 43(d) by registering <arizonaskydiving.com>, <skydivingarizona.com>, suggesting it considered Defendants use of Arizona Skydiving and Skydiving Arizona to be infringing. Accordingly, to avoid duplicative litigation and in exercise of its substantial discretion, the Court will also enjoin Defendants from using "Skydiving Arizona" or "Arizona Skydiving." See Coca-Cola, 692 F.2d at 1256 ("The district court has substantial discretion in defining the terms of an injunction . . . ."). The Court must now consider how much further, if at all, the reach of this injunction should extend.

The Ninth Circuit recognizes that an infringer has a duty to keep a "safe distance" from the trademark it previously infringed. See Wolfard Glassblowing Co. v. Vanbragt, 118 F.3d 1320, 1323 (9th Cir. 1997). In other words, when reentering the marketplace an

infringer is not permitted to make merely minimal changes to its infringing mark Id. Instead, to prevent further likelihood of confusion amongst potential customers, "an infringer must keep away from the 'margin line'" of the plaintiff's mark. Id. (quoting Plough, Inc. v. Kreis Labs., 314 F.2d 635, 639 (9th Cir.1963)). Plaintiff argues that the safe-distance rule supports the entry of an injunction that preemptively prohibits Defendants from using the words "Skydive" and "Arizona"in conjunction or combination with one another. The authority to which Plaintiff has cited, however, only discusses the safe-distance rule in the context of an alleged violation of an injunction or consent decree. See, e.g., Wolfard Glassblowing, 118 F.3d at 1322 ("The basic issue is whether [the defendant] violated the consent judgment by marketing "colorable imitations" of [the plaintiff's] oil lamps."); Plough, Inc. v. Kreis Labs., 314 F.2d 635, 639 (9th Cir. 1963) ("Appellees later either violated the injunction, or they did not."). This suggests that Courts apply the safe-distance rule remedially, not prospectively when crafting injunctive relief. In other words, the safe-distance rule informs whether an injunction or consent decree has been violated, not the crafting of the consent decree or injunction in the first instance. On the other hand, the cases to which Plaintiff cites also show that infringers are routinely enjoined from more than just not using plaintiff's trademark. In Plough, for example, the district court's injunction prohibited use of names "confusingly similar" to the plaintiff's trademarks. Likewise, in Eskay and Wolfard, the injunction prohibited the use of "colorable imitations" of a plaintiff's trademark.

In its papers, Plaintiff asserts that Defendants have made only minor or insignificant changes to their infringing websites and business practices in response to this litigation. For instance, Plaintiff has attached an exhibit showing that Defendants have changed the name of one of their fictitious websites from "Skydiving Arizona" to "Skydiving in Arizona." In light of this exhibit and other evidence demonstrating Defendants reluctance to alter their business practices, the Court is concerned that Defendants intend to push or are already pushing the boundaries of acceptable usage. Accordingly, this Court will prohibit

Defendants from using Plaintiff's trademark or any other "confusingly similar" marks as part of its business operation.

The Court, however, is unwilling, at this time, to conclude that the mark "Skydiving in Arizona" violates the safe distance rule or is confusingly similar to "Skydive Arizona." The phrase "Skydiving in Arizona" was not part of this litigation and taking such a step would deprive Defendants of their right to an adversarial process to determine likelihood of confusion. Likewise, the Court will decline Plaintiff's invitation to limit all possible combinations of the words "Skydive" and "Arizona" or their use together in a sentence. While it is likely that many such combinations will run afoul of the injunction, it is also possible that some will not, especially given the generic nature of these two words. Conversely, prohibiting Defendants from using a confusingly similar or colorable imitation of Plaintiff's trademark captures the spirit of the safe-distance rule, but does not necessitate its prospective application. The Court notes, however, that in any enforcement action, Plaintiff will not have to re-prove every element of infringement. See Wolfard Glassblowing, 118 F.3d at 1322 (" We agree with the Second Circuit that a plaintiff . . . who already has a judgment establishing that the defendant has infringed, is not required to muster all of the evidence it would need to make out an original infringement case in order to prove contempt.") Instead, it will merely have to prove Defendants are using a mark that is confusingly similar to or a colorable imitation of Plaintiff's protected mark, but under a lessened standard than at trial. Id. at 1322–23 (noting that a party attempting to enforce an injunction is "need not prove a likelihood of consumer confusion in the same manner that we would require in a trademark infringement case."). This places a heavier burden on an infringing party than is imposed on a newcomer to the marketplace, but is justified because "a party who has once infringed a trademark may be required to suffer a position less advantageous than that of an innocent party." Id. at 1323. (quoting Wella Corp. v. Wella Graphics, Inc., 37 F.3d 46, 48 (2d Cir.1994)).

Plaintiff also requests that this Court prohibit Defendants from using the "Skydive Arizona" trademark or other confusingly similar terms in links or keywords on their

websites. The Court finds that such relief is appropriate, especially because Defendants' business primarily utilizes the internet, and will extend Plaintiff's request to include the phrases "Arizona Skydiving" and "Skydiving Arizona" as well. Persons searching for Plaintiff's business should not be erroneously led to Defendant's website due to these marks placement in a meta tag or other link on Defendant's websites. See, e.g., Bernina of America, Inc. v. Fashion Fabrics Intern., Inc., 57 U.S.P.Q.2d 1881, 1884 (N.D. Ill. 2001) (preliminarily enjoining defendant from using plaintiff's trademark in meta tags); DeVry/Becker Educ. Dev. Corp. v. Totaltape, Inc., 2002 U.S. Dist. LEXIS 1230, *7–8 (N.D. Ill. Jan. 22, 2002) (enjoining use of plaintiff's trademark in internet links and keywords, and "in any other manner in connection with the internet that would cause consumers to believe erroneously that [defendant's] goods or services are somehow sponsored by, authorized by, licensed by, or in any other way associated with [plaintiff]".). In taking this step, the Court is not unaware of Defendants' concerns that the generic nature of the words "skydive" and "Arizona" will unfairly prevent Defendants from practicing their business in Arizona. The injunction, however, is not a blanket prohibition against using these words on its website or in meta tags. It merely prohibits Defendants from using "Skydive Arizona," "Arizona Skydiving," "Skydiving Arizona," and any other combination of those words that is confusingly similar to that mark. There is, for example, a difference between using those words in combination as proper nouns, and merely utilizing them individually or in the course of a sentence. The former, depending on the circumstances, is likely prohibited by this injunction, but the latter usage probably is not.

    2.  Relief for Defendants' violation of Lanham Act § 43(a)

The Court next turns to Plaintiff's request for injunctive relief related to Defendants' violation of Lanham Act § 43(a). Under 15 U.S.C. § 1116, Courts may grant injunctions when a defendant has committed a violation of § 43(a). This includes enjoining commercial advertising, despite its status as speech. U-Haul Intern., Inc. v. Jartran, Inc., 793 F.2d 1034, 1042 (9th Cir. 1986) ("The district court was correct in granting this injunctive relief.

Nothing is clearer in the emerging law of commercial free speech than that false or misleading commercial speech is clearly 'subject to restraint.'")

At summary judgment, this Court found that Defendants made false statements of fact in commercial advertisements. Specifically, it found that numerous websites operated by Defendants falsely claimed Defendants owned or operated skydiving centers in Arizona, Phoenix, Tempe, Scottsdale, Mesa, Glendale, Yuma, Flagstaff, Chandler, Peoria, and Tucson when Defendants neither owned nor operated any such facilities. Additionally, the Court found that Defendants engaged in unfair competition by using photographs of Plaintiff's business on their website.[2] There is little question that allowing Defendants to continue the practices which caused it be found liable for violating § 43(a) would not effectuate the statute's remedial purpose. See Planetary Motion, Inc. v. Techplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001) ("Section 43(a) is remedial in nature and should be interpreted and applied broadly so as to effectuate its remedial purpose."). And absent an injunction, the Court is concerned Defendants will continue its unlawful behavior. Accordingly, the injunction will prohibit Defendants from using photographs or other images that depict Plaintiff's business. It will also prohibit Defendants from falsely stating, suggesting, or implying that it owns or operates skydiving services in Arizona where none exist.

Once again, Plaintiff would like this Court to go further than merely prohibiting the conduct for which Defendants have been found liable. Specifically, Plaintiff wants Defendants enjoined from operating any website or using any domain name that utilizes the word "Arizona" or the name of any Arizona city as part of a business or domain name. It argues that Defendants' use of "Arizona" or the names of Arizona cities are false

---

[2]This Court has colloquially referred to § 43(a) as prohibiting false advertising, but it actually encompasses much more. Namely, § 43(a) protects the public and business owners against misrepresentations concerning geographic origin, false or misleading statements concerning the characteristics and qualities of services offered in commercial advertising, and the use of false designations of origin and misleading representations of fact which are likely to cause confusion or mistake or deceive the public concerning a business's origin, sponsorship, and commercial activities. See 15 U.S.C. § 1125(a)

1 designations and misrepresentations of geographic origin in violation of §43(a)(1)(B) and
2 § 43(a)(1)(B) of the Lanham Act. Plaintiff, however, has not proved as much during the
3 course of this litigation. As mentioned before, this Court's finding of an actionable false
4 statement focused on Defendants' misrepresentations that it operated skydiving centers, not
5 the mere use of geographic terms related to Arizona. Similarly, the Court did not conclude
6 that Defendants' ownership or usage of domain names using Arizona cities was violative of
7 section 43(a), just that Defendants used false statements on those websites. Plaintiff's
8 proposed injunction, therefore, would go well beyond preventing Defendants from repeating
9 the conduct that spurred this lawsuit and would, as a result, unfairly penalize Defendants and
10 hinder their ability to conduct legitimate business in Arizona. Plaintiff is entitled to be free
11 from unfair competition, but not competition altogether. If Defendants are honest about the
12 services they provide—selling tickets redeemable at participating skydiving centers—it is
13 quite possible their business will not run afoul of the Lanham Act, and they should be given
14 that opportunity.

15 Likewise, this Court also rejects Plaintiff's request that this Court limit Defendants
16 to one website in connection with any business that involves selling certificates for
17 skydiving, or other adventure sports. Plaintiff is overreaching. Despite it being the more
18 common practice in the business community, there is no law mandating a business have only
19 one website. Additionally, this Court cannot permit Plaintiff to use this lawsuit as a vehicle
20 to police Defendants' actions throughout the country; actions that have not been proven to
21 be illegal in a court of law.

22         3.     Relief for Defendants' violation of Lanham Act § 43(d)

23 Finally, Plaintiff requests a permanent injunction relating to Defendants violation of
24 Lanham Act § 43(d), i.e. cybersquatting. At trial, the jury determined that six
25 websites—<arizonaskydive.net>, <arizonaskydiving.com>, <skydivingarizona.com>,
26 "<skydivingaz.com>, <skydivearizona.net>, and <arizonaskydive.com>—violated § 43(d).
27 In the face of a violation, § 43(d) specifically authorizes this Court, at its discretion, "to order
28 the forfeiture or cancellation of the domain name or the transfer of the domain name to the

1 owner of the mark." 15 U.S.C. 1125(d)(1)( C). In its discretion, the Court will order the
2 foregoing domain names transferred to Plaintiff. It will not, however, order the transfer of
3 <skydivinginarizona.com> to Plaintiff, nor will it enjoin Defendants from owning or using
4 any domain name that includes any combination of the words "skydive" and "arizona."
5 Such steps would go well beyond the jury's verdict and may prohibit Defendants from
6 engaging in legitimate business in Arizona, which, despite the outcome of this lawsuit, is still
7 their right.

**Accordingly,**

**IT IS HEREBY ORDERED** that pursuant to the Court's equitable powers, and in accordance with 15 U.S.C. §§ 1116(a) & 1125(d)(1)(C) and Rule 65 of the Federal Rules of Civil Procedure, Defendants Cary Quattrocchi, Ben Butler, USSO LLC, Atlanta SC, Inc., CASC Inc., IGOVincent, Inc., and any other d/b/a or entity name used currently or in the future by any Defendant including Thrillplanet, Soaring Sports, and Adventure Sports, their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with any of them, who receive actual notice of this Injunction by personal service, or otherwise, are hereby permanently restrained and enjoined as follows:

1. from using the trademark "Skydive Arizona," or any marks that are confusingly similar or colorable imitations of that trademark, in connection with the sale, advertising or promotion of any products or services;

2. from using "Skydiving Arizona" or "Arizona Skydiving" in connection with the sale, advertising or promotion of any products or services;

2. from using the trademark "Skydive Arizona," or any marks that are confusingly similar to or colorable imitations of that trademark, and from using "Skydiving Arizona," and "Arizona Skydiving," on or in connection with or as part of any website, including in meta tags, keywords in pay-for-placement or payfor-rank search engines, in source code or other computer code, for the retrieval of data or information or as search terms, in the domain names of any websites, in any titles, headings, statements, links or other text appearing on any page of any

1 website in any location on any websites registered, owned, or used, directly or indirectly, by any of the Defendants;

4. from using in connection with any skydiving products or services, any promotional materials, advertisements, fliers, brochures, proposals, labels, signs, contracts, invoices, or any Internet or on-line website, which suggest that Defendants own or operate a skydiving center in Arizona where they do not in fact own and operate a skydiving center;

5. from using, copying, or reproducing graphics, images, photographs or other material depicting any of Skydive Arizona's aircraft, staff, facilities, teams, or photos taken at events located at or sponsored by Skydive Arizona;

**IT IS FURTHER ORDERED** that pursuant to 15 U.S.C. §1125(d)(1)(C), Defendants Cary Quattrocchi, Ben Butler, USSO LLC, Atlanta SC, Inc., CASC Inc., IGOVincent, Inc., and any other d/b/a or entity name used currently or in the future by any Defendant including Thrillplanet, Soaring Sports, and Adventure Sports, their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with any of them, who receive actual notice of this Injunction by personal service, or otherwise, are hereby ordered to transfer to Plaintiff Skydive Arizona within ten (10) business days from the entry of this Injunction the following domain names: <arizonaskydive.net>, <arizona-skydiving.com>, <skydivingarizona.com>, <skydivingaz.com>, <skydivearizona.net>, and <arizonaskydive.com>; and are hereby permanently restrained and enjoined from registering, owning, using, or controlling, directly or indirectly, those domain names in the future.

DATED this 26th day of April, 2010.

_____
Mary H. Murguia
United States District Judge

- 14 -