**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SKYDIVE ARIZONA, INC., ) | No. CV 05-2656-PHX-MHM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| CARY QUATTROCCHI, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I. Background

Currently before the Court is Plaintiff Skydive Arizona's request for attorney's fees. Having carefully considered the Parties' briefs, the Court issues the following Order.

In a previous Order, the Court determined that Plaintiff is entitled to attorney's fees pursuant to 15 U.S.C. § 1117(a) of the Lanham Act, which permits such an award in exceptional cases. (Doc. 423). At that time, the Court directed Plaintiff to file a "memorandum in support of its fees request within 60 days of the entry of judgment." (Id.). Judgment was entered on April 16, 2010, and soon thereafter Plaintiff filed its Memorandum in Support of Motion for Award of Attorney's Fees and Related Non-Taxable Expenses, requesting a fee award of $3,030,330.00. (Doc. 466). Defendants responded, (Doc. 484), and Plaintiff replied. (Doc. 498). Defendants' oppose this request on both procedural and substantive grounds.

## II.     Skydive Arizona's Fee Request

### A.     Defendants' Procedural Objections

The Court turns first to Defendants' procedural objections. Defendants argue that Plaintiff filed its memorandum late. This is incorrect. Plaintiff had two months from the date of the entry of judgment—April 16, 2010— to file, and it beat this deadline by one day, filing June 15, 2010. Defendant also contends that Plaintiff did not comply with LRCiv 54.2(d), because the Declaration of Sid Leach explained his qualifications, but not the qualifications of the other attorneys's who worked on this case, of which there appears to been 13. This allegation is true, but has been substantially remedied by the Declaration of Monica A. Limon-Wynn that Plaintiff attached to its reply and which discusses the qualifications of the other attorney's who billed substantial hours on this case. Aiello v. Windham Professionals, Inc., 2010 U.S. Dist. LEXIS 131241, *9 (D. Ariz. Nov. 23, 2010) (explaining that with respect to LRCiv 54.2, "courts at their discretion may allow a party to supplement required documents to its original motion," and allowing such a supplementation to be made through the plaintiff's reply brief).

Defendants also complain that statement of consultation provided by Plaintiff does not comply with LRCiv. 54.2 because it does not contain the required information and because in fact a consultation never occurred. In its statement of consultation, Plaintiff's attorney, Ms. Limon-Wynn, certifies that "after personal consultation and a good faith effort to do so, the parties are unable to resolve all disputed issues relating to payment of the outstanding judgment, including staying the judgment and or payment of attorneys' fees." (Doc. 466, exh. 1). This statement does not fully comply with the rules. In addition to a statement that counsel consulted in an attempt to resolve the fee issue, LRCiv 54.2 requires that the "statement of consultation shall set for the date of the consultation, the names of the participating attorneys and the specific results or shall describe the efforts made to arrange such conference and explain the reasons why such conference did not occur." LRCiv 54.2(d)(1). The deficiency in Plaintiff's statement of consultation, however, is not necessarily fatal to its request for fees. Courts in this district may overlook such procedural

shortcomings at their discretion, especially when doing so would not prejudice a defendant. See Hoskins v. Metro. Life Ins. Co., 2008 U.S. Dist. LEXIS 44008, *4–6 (D. Ariz. June 3, 2008) (awarding fees even though plaintiff did not include a statement of consultation in its fee application because the court "did wish to prolong these proceedings and require even more expenditure of fees," and the defendants had "carefully addressed the merits and thus [we]re not unduly prejudiced by our consideration of fees."); Rudebusch v. Arizona, 2007 U.S. Dist. LEXIS 70690 (D. Ariz. Sept. 20, 2007) (awarding attorney's fees even though plaintiff did not include a statement of consultation in its fee application). Plaintiff's failure to include all of the required information in its statement of consultation is regrettable and sloppy, but it does not affect this Court's ability to make a fair decision concerning the fee application, and overlooking this irregularity will not prejudice Defendants. Likewise, even assuming no consultation occurred, as Defendants allege, the Court will not dismiss the instant fee application on such grounds. Based on the rancor between the Parties in this case and their repeated failure to work out issues without resorting to motion practice, the Court highly doubts any such consultation would have been productive. Consequently, ordering Plaintiff to file a new memoranda after Parties have consulted would be a waste of both their time and this Court's. See Hoskins, 2008 U.S. Dist. LEXIS 44008 at *6. The Court now turns to the substance of Plaintiff's request, and Defendants' objections thereto.

### B.     Award of Fees

At the outset, the Court must note that many of Plaintiff's arguments and Defendants' objections thereto have been rendered superfluous by both of their failure to appreciate the applicable legal standard. Quite simply, Plaintiff does not realize that in making a fee award pursuant to 15 U.S.C. § 1117, the district court must use the lodestar method for calculating attorney's fees, and Defendants, rather than correcting this misapprehension, merely oppose Plaintiff's position. Gracie v. Gracie, 217 F.3d 1060 (9th Cir. 2000) (stating that the lodestar should be used in calculating attorneys fees under 15 U.S.C. § 1117);     Intel Corp. v. Terabyte Int'l, 6 F.3d 614, 622 (9th Cir. 1993) (noting that "the district court must first determine the presumptive lodestar figure" in reviewing a case for attorneys fees awarded

under 15 U.S.C. § 1117). The crux of Defendants' arguments, however, are that the attorney's fee request made by Plaintiff is unreasonable, and the Court will bear this in mind as it determines the appropriate award. The presumptive lodestar is calculated by "multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate." Id.[1] The Court will address hours and rate before addressing whether certain factors warrant an adjustment of the lodestar.

### 1.     **Reasonable Hourly Rate**

Plaintiff seeks to recover the rates they actually charged in this case, in addition to fees they earned on a contingency basis.[2] A reasonable rate, however, is not determined by reference to the rates actually charged by the attorneys. Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 946 (9th Cir. 2006)(stating that determination of a reasonable hourly rate is "not made by reference to the rates actually charged the prevailing party"); Carson v. Billings Police Dep't, 470 F.3d 889, 892 (9th Cir. 2006) ("prevailing market rate, not individual

---

[1] In its brief, Plaintiff relies heavily on Schweiger v. China Doll Restaurant, 138 Ariz. 183 (Ct. App. 1983). In China Doll Restaurant, the Arizona Court of Appeals noted that use of the lodestar is most common in cases where fees are not paid on an hourly basis, and "is unnecessary where the parties have agreed that payment for legal services is to be made based upon the attorney's billing rate charged for time actually expended." Id. at 187 n.5. This rule, however, governs only attorney's fees awarded pursuant to Arizona law, not those awarded pursuant to federal statute. And federal case law makes clear that the lodestar is the proper method to determine a fee award pursuant to 15 U.S.C. § 1117. Accordingly, Plaintiff's memorandum is devoid of citation to applicable case law and argument governing the calculation of the lodestar.

[2] Between August 19, 2005 and January 31, 2008, Plaintiff and his attorney's had a fee agreement under which Plaintiff paid an hourly rate for his attorneys' services. Beginning in February 2008, due to the burdensome cost of the litigation, Plaintiff and his attorneys entered into a modified fee agreement. Under this new agreement, Plaintiff paid 65% of his attorney's hourly rate. The other 35%, however, was due upon such time as a judgment was entered in Plaintiff's favor ("Deferred Fees"). Also as part of the modified fee agreement, Plaintiff agreed to pay his attorneys' a premium totaling 20 percent of the judgment after subtracting the amount paid in Deferred Fees from the judgment ("Premium"). Accordingly, Defendant requests $121,233.00 in hourly fees (which includes the Deferred Fees) and $1,818,000 to repay the Premium, for a total award of $3,030,330.00.

- 4 -

1  contract between the applicant attorney and the client, provides the standard for lodestar
2  calculations"). Instead, it is one that reflects the prevailing market rate in the community for
3  similar services of lawyers 'of reasonably comparable skill, experience, and reputation."
4  Dang v. Cross, 422 F.3d 800, 814 (9th Cir. 2005); see Northeastern Lumber Mfrs. Ass'n v.
5  Northern States Pallet Co., 2011 U.S. Dist. LEXIS 11876, *27 (D.N.H. Jan. 31, 2011)
6  (applying this standard for a reasonable hourly rate in awarding attorney's fees for a violation
7  of the Lanham Act). "[T]he burden is on the fee applicant to produce satisfactory
8  evidence--in addition to the attorney's own affidavits--that the requested rates are in line
9  with," the prevailing market rate. Dang v. Cross, 422 F.3d at 814. Finally, in calculating
10 the lodestar, the "relevant legal community" is generally the forum in which the district
11 court sits. Mendenhall v. NTSB, 213 F.3d 464, 471 (9th Cir. 2000).

12       In support of its fee request, Plaintiff has provided this Court with affidavits submitted
13 by Ms. Limon Wyn and Mr. Leach, the attorneys who billed the vast majority of the hours
14 in this case. The affidavits, attest to the reasonableness of the hourly rates billed, stating they
15 were in accordance with other lawyers in the community and with similar experience,
16 training, and education. They also set forth the background and experience of the attorneys
17 who worked on this case. Additionally, in defending against Defendants' allegation that the
18 fees Plaintiff requested were unreasonable, Plaintiff's reply brief cites to and attaches as an
19 exhibit portions of the Arizona Bar's 2007 edition of the Economics of Law Practice in
20 Arizona ("the publication"). STATE BAR OF ARIZONA, ECONOMICS OF LAW PRACTICE IN
21 ARIZONA (2007)

22       Turning first to the Arizona Bar publication, contrary to Plaintiff's position, it
23 demonstrates that the rates charged in this case were well above the median rate charged by
24 similarly situated attorneys. Among firms with 50 or more practicing attorneys the median
25 2007 billing rate was $333. STATE BAR, *supra*, at 24. Additionally, for associates and
26 partners in a firm of 8+ partners, the median hourly rate billed was $200 and $345
27 respectively. Id. at 25. Associates with 10+ years of experience, like Ms. Limon Wynn,
28 charge $245. Id. at 26. Finally, in intellectual property cases the media hourly rate billed in

1  Arizona was $268.  Id. at 25.  During the course of the litigation, Mr. Leach's hourly rate
2  ranged from $450.00 in 2005 to $615.00 in 2010.  Ms. Limon-Wynn's 2007 rate was $320,
3  and has since climbed to $400.  Other attorneys who worked on the case billed similar rates.
4  One might guess that the discrepancy between the rates billed in this case and those charged
5  by the median Arizona attorneys owes to the superior skill, experience, and reputation of
6  Plaintiff's attorneys.  Plaintiff, however, has failed to produce any evidence, other than their
7  own attorney's affidavits, evidencing that such an assumption is warranted.  Plaintiff has not,
8  for example, submitted evidence of rate determinations in a similar cases or provided this
9  Court with affidavits from non-interested attorneys concerning the reasonableness of the rates
10 charged by its attorneys or of their reputation within the community.  Earthquake Sound
11 Corp. v. Bumper Indus., 352 F.3d 1210, 1215 (9th Cir. 2003) ("Earthquake had submitted
12 an affidavit of an attorney practicing in the same region as Earthquake's attorneys opining
13 that Earthquake's attorney's rates were reasonable and customary, and that Earthquake's
14 attorneys had a favorable reputation in their area for intellectual property litigation."); United
15 Steelworkers of America v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990) (noting
16 that "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in
17 the community and rate determinations in other cases, particularly setting a rate for the
18 plaintiffs' attorney, are satisfactory evidence of the prevailing market rate"); Beauford v.
19 E.W.H. Group, Inc., 2009 U.S. Dist. LEXIS 94985, *11–13 (E.D. Cal. Sept. 28, 2009)
20 (relying on attorney's declaration as to rate he was paid on other similar cases in finding that
21 his requested fee was reasonable).  Without such evidence, the Court is unable to presume
22 that the fees charged by Plaintiff's attorneys were reasonable.  Instead the Court will follow
23 the Arizona Bar's publication median rates, with one exception.  The Court's experience
24 teaches it that Mr. Leach credentials and experience set him apart from many of the
25 attorney's who practice before this Court.  Accordingly, the Court will assign to him the
26 hourly rate billed by the 75 percentile of attorneys who practice in law firms with eight or
27 more partners, $388.  Therefore this sets the presumptive lodestar at $245 for work done by
28 Ms. Limon Wynn, $200 for work done by other associates, $345 for work done by partners,

and $388 for Mr. Leach. As for legal assistants, who did a substantial amount of work in this case, the Court will utilize a lodestar amount of $95.00, which splits the difference between the median amount billed by legal assistants with 1-4 years of work and 5-10+ years of work. STATE BAR, *supra*, at 26.

A reasonable fee calculation, however, should also take into account "the novelty and complexity of the issues . . . the quality of representation . . . and the results obtained." Morales v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996). Numerous of these factors support finding a reasonable hourly rate that is higher than the ones found in the Arizona Bar publication. To begin with, the results obtained by Plaintiff's counsel were exemplary. Plaintiff prevailed on all of its claims, and ended up securing one of the seventh largest damages awards in Arizona for all of 2009. Kelly Wilkins MacHenry, *Arizona Civil Verdicts 2009*, ARIZONA ATTORNEY, June 2010, at 31. That they were able to do so speaks to the quality of the representation which, for much the case, has been quite high. Additionally, the issues presented in this case were somewhat complex, dealing with nuances of trademark law. In light of these considerations, the Court finds that a reasonable hourly fee for the attorneys is $100 higher than the baseline calculation decided on by the Court. In determining the reasonable fee, the Court is not unaware that part of the representation was undertaken on a contingency basis. The Ninth Circuit, however, has rejected "contingency as a factor relevant to the establishment of a reasonable fee." Davis v. City and County of San Francisco, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (1993). Accordingly, the reasonable rate is $488 for Mr. Leach, and $445 for all other partners who worked on this case, $345 for Ms. Limon Wynn, and $300 for all other associates that worked on this case.

**B.  Reasonable Hours Expended**

The Court turns next to the reasonableness of the hours spent working on the case. Plaintiff's have provided this Court and Defendants with a detailed report of the hours they have billed for this case and the reasons why. The Court has carefully considered and reviewed this report and finds that it is meticulous, fair, and reasonable. It has detected no

- 7 -

1  evidence of billing for duplicative or excessive work, and Plaintiff's attorneys did not engage
2  in block-billing or any other timekeeping method that thwarted this Courts ability to appraise
3  the reasonableness of the requested hours. See Moreno v. City of Sacramento, 534 F.3d
4  1106, 1113 (9th Cir. 2008) (stating that a court may find unreasonable hours spent on
5  excessive or duplicative work); Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir.
6  2007) (noting that courts may reduce hours where the evidence of those hours is in the form
7  of block billing). Also, the Court notes that Defendants have not raised a single objection
8  to reasonableness of attorney hours billed, focusing solely instead on the reasonableness of
9  the amount billed for those hours, and make only a generalized, unspecific, and unsupported
10 accusation concerning legal assistant fees. Accordingly, the Court will permit Plaintiff's to
11 recover attorney's fees for 950 hours by Ms. Limon-Wynn, 930 hours by Mr. Leach, 110
12 hours by Wendy Neal, 49 hours by Rick Tache, 63 hours by Teresa K. Anderson, and 78
13 hours for work done by various associates during the trial. (Declaration of Monica Limon-
14 Wynn, Doc. 498). Additionally, Plaintiff may recover the requested 1,778 hours of legal
15 assistant time.

### C.    Adjustment of the Lodestar

Although, "[t]he lodestar amount presumably reflects the novelty and complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation," Intel Corp., 6 F.3d at 622, a court may "in its discretion, adjust the lodestar amount after considering other factors that bear on the reasonableness of the fee." Dang, 422 F.3d at 812; Intel Corp., 6. F.3d at 622 (noting that a court may adjust the lodestar based on factors "that have not been subsumed in the lodestar calculation."). The factors that may support an adjustment of the lodestar are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Morales v. City of San Rafael, 96 F.3d 359, 364 (9th Cir. 1996) (citing Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975)). However, "[t]here is a strong presumption that the lodestar figure represents a reasonable fee. Only in rare instances should the lodestar figure be adjusted on the basis of other considerations." Id. at n.8 (internal quotation omitted). Because Plaintiff's motion does not argue for attorney's fees under the lodestar framework, it does not make any arguments as to why this case is one of those rare instance in which the lodestar should be adjusted. Additionally, the Court notes that any factor which might support an upward adjustment has been subsumed by the lodestar calculation itself, especially in light of the fact that the contingent nature of a fee is no longer a factor that may justify a fee enhancement. Cann v. Carpenters' Pension Trust Fund, 989 F.2d 313, 318 (9th Cir. 1993). The Court therefore declines to make any further upward adjustment.

### D.  Conclusion

Under the lodestar set by this Court, Plaintiff is entitled to $1,063,555.00 in attorney's fees.

## II.  REASSIGNMENT OF THIS CASE

Having completed the award of attorney's fees, the Court will direct the Clerk of the Court to reassign this matter to another district judge. The Court finds that such a transfer is appropriate in light of Plaintiff's outstanding Emergency Motion to (1) Issue Writ to Recover Property; (2) Pierce the Corporate Veil of Certain Entities; and (3) Appoint Receiver to Prevent Further Dissipation of Assets and Preserve Property, which is an extensive post-judgment motion that will likely require hearings. The Court finds that transfer is also prudent at this juncture in light of the history and fairly acrimonious nature of this litigation, as collection of the judgment and other post-judgment issues will likely continue to require the involvement of the Court.

///

1 **Accordingly,**

2 **IT IS HEREBY ORDERED** granting Plaintiff attorney's fees in the amount of
3 $1,063,555.00.

4 **IT IS FURTHER ORDERED** directing the Clerk of the Court to reassign this case
5 to another District Judge.

6 DATED this 21st day of March, 2011.

_____
Mary H. Murguia
United States District Judge